USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 09 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
SECURITIES AND EXCHANGE :
COMMISSION, :
:
                      Plaintiff, :    No. 11 Civ. 6500 (RA)
:
      -v- :    OPINION AND ORDER
:
ONE OR MORE UNKNOWN PURCHASERS :
OF SECURITIES OF GLOBAL :
INDUSTRIES, LTD., :
:
                      Defendants. :
:
------------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

    The United States Attorney for the Eastern District of New York ("U.S. Attorney") moves to intervene in this civil action ("Civil Case") and to stay discovery pending completion of an ongoing criminal investigation ("Criminal Case"). Defendant Ergoport Experts Limited ("Ergoport") opposes the U.S. Attorney's motion ("Motion"). Plaintiff Securities and Exchange Commission ("SEC") does not. For the reasons stated below, the Motion is granted. Discovery in this case shall be stayed for six months from the date of this Order, with the possibility of an extension at that time upon a showing of good cause.

A. Background

    1. The Civil Case

    On September 16, 2011, the SEC filed a Complaint alleging that one or more unknown Defendants made "highly profitable and suspicious" purchases of the common stock of Global Industries, Ltd. ("Global"). (Compl. ¶ 1.)[1] Defendants made these purchases shortly before a

---

[1]     The SEC sued "unknown" Defendants because the purchases were made through an omnibus account, the

September 12, 2011 announcement that Global would be acquired by another company, news that dramatically increased the value of Global stock. (Id.) Defendants sold the stock the same day and realized a profit of approximately $1,726,810. (Id. ¶ 2.) The Complaint alleges that Defendants traded on inside information that Global would be acquired and, in so doing, violated federal securities laws. (Id. ¶¶ 19-22.)

Also on September 16, 2011, Judge Castel, to whom this case was previously assigned, entered a temporary restraining order freezing assets tied to the alleged fraud and ordered the unknown Defendants to show cause why a preliminary injunction should not issue. (Dkt. No. 4.) Defendants failed to appear and, on September 22, 2011, Judge Castel granted a preliminary injunction extending the asset freeze. (Dkt. No. 7.) That order also required, *inter alia*, that Defendants disclose contact information and any accounts held in their names. (Id.)

On April 13, 2012, Ergoport appeared in this case, providing addresses in New Zealand and Russia and a bank account number at a Latvian bank. (Dkt. Nos. 11, 12.) On May 10, 2012, Judge Castel endorsed a stipulation between the SEC and Ergoport that modified the asset freeze to limit it to funds held in a Citibank account in the amount of $5,338,763.63. (Dkt. No. 13.)

The matter was reassigned to the undersigned on July 9, 2012. (Dkt. No. 14.) Ergoport answered the Complaint on July 31, 2012, admitting to making the relevant trades but denying wrongdoing. (Dkt. No. 17.) The U.S. Attorney filed the Motion on August 16, 2012. (Dkt. No. 21.) It was fully briefed on September 21, 2012, and the Court heard oral argument on October 12, 2012.

### 2. The Criminal Case

A federal grand jury in the Eastern District of New York is presently conducting an investigation into an insider trading scheme involving an individual, identified as CC-1, who

---

records of which do not identify the beneficial owners. (Compl. ¶ 6.)

previously held a high-level position in "the government of a Central Asian country [that] was overthrown by a coup d'etat in 2010." (Mem. 3, 6.) The investigation seeks to determine whether CC-1 and co-conspirators used inside information to trade on securities of several public companies, including Global, from 2010 to 2012. (Id. 3-4.) The investigation also concerns accounts held in Ergoport's name that allegedly funded the Global and other trades at issue. (Id. 3, 6.)

B. Intervention

The U.S. Attorney has made a persuasive case that her interest in protecting the Criminal Case justifies intervention in the Civil Case. Ergoport concedes that intervention is proper. (Tr. 2.) Accordingly, the U.S. Attorney's motion to intervene is granted.

C. Discovery Stay

The U.S. Attorney also moves to stay discovery in the Civil Case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). While staying a civil case is "an extraordinary remedy," Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995), courts will not hesitate to grant a stay "when the interests of justice seem to require" it. In re Worldcom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2002 WL 31729501, at *3 (S.D.N.Y. Dec. 5, 2002) (quoting Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986)) (punctuation omitted). When making a stay determination, courts must "balance the competing interests at stake," SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *12 (S.D.N.Y. Jan. 26, 1993), and use "[j]udicial discretion and procedural flexibility . . . to prevent the rules and policies applicable to one suit from doing violence to those

pertaining to the other." In re Boesky Sec. Litig., 128 F.R.D. 47, 49 (S.D.N.Y. 1989) (citation omitted).

"A district court may stay civil proceedings when related criminal proceedings are imminent or pending, and it will sometimes be prudential to do so." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 98 (2d Cir. 2012). District courts balance the following six factors when considering whether to stay a civil matter:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Id. at 99 (citing Transworld, 886 F. Supp. at 1139). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." SEC v. Jones, No. 04 Civ. 4385 (RWS), 2005 WL 2837462, at *1 (S.D.N.Y. Oct. 28, 2005) (citation omitted). As the Second Circuit recognizes, however, this test is not a "mechanical device[] for churning out correct results in overlapping civil and [criminal] proceedings, replacing the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Louis Vuitton, 676 F.3d at 99.

Having carefully considered each of the above-listed factors in light of the circumstances of this case, the Court finds that a stay is warranted.

**1. Overlap of Issues**

The issues presented in the Civil Case relate exclusively to allegedly fraudulent trades of Global stock. (Compl. ¶ 1.) Those trades are among the transactions under investigation in the Criminal Case. (Mem. 3-4.) The issues raised in the Civil Case therefore are substantially, if not

entirely, encompassed within the larger-scale Criminal Case. (See Tr. 3, 21.)

**2. The Status of the Criminal Case**

Courts have noted that a civil stay is most appropriate when the defendant has already been indicted, as "the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued." Transworld, 886 F. Supp. at 1139. Accordingly, courts often decline to entertain a civil stay sought by a defendant who has not yet been indicted. See, e.g., Citibank, N.A. v. Hakim, No. 92 Civ. 6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993). The analysis, however, differs where, as here, the government is requesting a stay that is opposed by the defendant. See, e.g., CFTC v. A.S. Templeton Grp., Inc., 297 F. Supp. 2d 531, 534-35 (E.D.N.Y. 2003) (distinguishing defendants' pre-indictment stay motion from the motion granted in Downe, in which the "*government*, not [the] defendant," sought a pre-indictment stay) (emphasis in original). In the latter circumstance, "[c]ourts have granted stays of discovery in order to protect the integrity of pending criminal investigations, even where an indictment has not yet been returned." Downe, 1993 WL 22126, at *13 (citing cases).

The U.S. Attorney represents that a decision as to whether she intends to indict will be made within approximately six months. (Tr. 19.) While a six-month stay may impose some burden on Ergoport, as it would on any defendant anxious to challenge serious civil allegations, this time frame is reasonable given the apparent scope and complexity of the Criminal Case.

**3. Plaintiff's Interest**

The SEC, the Plaintiff in the Civil Case, does not oppose the U.S. Attorney's Motion. (Tr. 5.) This position perhaps indicates support for a stay, but at the very least makes clear that the SEC does not believe it will be prejudiced by one. See SEC v. Syndicated Food Serv. Int'l, 04 Civ. 1303 (E.D.N.Y. Aug. 26, 2004) ("[A] stay of discovery would not prejudice the plaintiffs

in the civil case, as evidenced by the fact that the SEC does not oppose the USAO's motion.").[2]

### 4. Defendant's Interest

Ergoport asserts an interest in expeditiously resolving the Civil Case so that (1) its assets may be unfrozen and (2) its reputation may be restored and it may conduct business without "the cloud of the SEC hovering over it." (Opp'n 11-12.) While these are valid interests and may, in certain circumstances, serve to support denial of a stay, they are unavailing here.

First, Ergoport stipulated to having its assets frozen pending resolution of the Civil Case, which is still in the early stages of discovery. (Tr. 24 ("We have agreed with the SEC earlier on in the investigation to keep this money frozen pending the resolution of the civil case.").) Ergoport's prejudice therefore is not that a stay deprives it of access to assets that would otherwise be liquid, but only that a stay may require Ergoport to wait an additional period of time to access the assets it already agreed to subject to a freeze of indefinite length.[3]

Second, while delay in this case may impose some continued burdens on Ergoport's reputation and business operations, Ergoport has failed to demonstrate that these burdens have had, or will have, any substantial, or even concrete, prejudicial effect. When questioned at oral argument about the specific prejudice Ergoport has suffered or will suffer as a result of the proposed stay, Ergoport represented that it was anxious to clear its name because "compliance

---

[2] The Court rejects Ergoport's assertion that the "government" cannot now benefit from a stay to remedy its "self-inflicted problem" of having proceeded in both the civil and criminal arenas. (Opp'n 9.) Courts acknowledge that the SEC and the U.S. Attorney have "different public responsibilities, the SEC to protect the integrity of the securities markets and, in some instances, to seek compensation on behalf of victims of violations of our securities laws and the United States Attorney to detect and prosecute criminal violators of those laws." SEC v. Beacon Hill Asset Mgmt. LLC, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003). There is simply no reason to believe that the SEC and the U.S. Attorney coordinated their efforts to obtain some strategic advantage at Ergoport's expense. Indeed, the U.S. Attorney has represented that "both the SEC and the United States Attorney's Office were unaware of the overlap in their respective investigations until after the SEC Complaint was filed." (Reply 6; see also Tr. 8.)

[3] Furthermore, even if the Civil Case were resolved quickly and in Ergoport's favor, the U.S. Attorney has indicated that she would seek a seizure warrant to keep these assets frozen. (Tr. 22.) The U.S. Attorney represents that the probable cause standard for obtaining a seizure warrant "is more than satisfied by the evidence" thus far obtained. (Id.)

departments" and "various institutions where [Ergoport's] accounts are located" have asked "whether the trading was legitimate," and for "more information about what the lawsuit is about" and "whether it has any merit or not." (Tr. 13-14.) Ergoport does not, however, assert that these inquiries have resulted in any tangible prejudice. See SEC v. Doody, 186 F. Supp. 2d 379, 382 (S.D.N.Y. 2002) ("Perhaps [the civil defendant] will lose his job, and perhaps he will have some difficulty finding new employment while this action is pending. But the fact is that he has not lost it yet and may not lose it . . . [T]here is no basis whatever to suppose that a delay of discovery . . . would mean the difference between his putting food on the table and starvation.").

Put simply, Ergoport's asserted burdens are not concrete or weighty enough to tip the scales against a stay. This is especially so when these burdens are balanced against those asserted by the U.S. Attorney. See id. (granting government's stay request where defendant "failed to demonstrate that he [would] suffer prejudice that outweighs the government's interest in obtaining a stay").

### 5. The Court's Interest

The Court has an interest in the efficient resolution of the Civil Case. See Worldcom, 2002 WL 31729501, at *8. As the U.S. Attorney suggests, a stay may serve that interest to the extent the Criminal Case resolves issues such as "the identity of the other defendants in the SEC case." (Reply 7.) While true, this argument is not especially compelling in its own right, for moving forward with discovery in the Civil Case presumably would also resolve such issues. It does, however, lend credence to the notion that the Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome. See Rosenthal v. Giuliani, No. 98 Civ. 8408 (SWK), 2001 WL 121944, at *2 (S.D.N.Y. Feb. 9, 2001) ("[A] stay in the action will streamline later civil discovery since transcripts from the criminal case will be available to the civil

parties."); Transworld, 886 F. Supp. at 1140 ("[T]he evidence gathered during the criminal prosecution can later be used in the civil action.").

Nonetheless, "[o]f greater significance to judicial efficiency is the uncertainty as to when the criminal proceedings will conclude." Worldcom, 2002 WL 31729501, at *8. Uncertainty is cause for concern here, as the U.S. Attorney has not yet even made a decision whether she intends to seek an indictment in the Criminal Case. It is for that reason that the stay the Court enters today will expire in six months, and may be extended only by further application demonstrating good cause.

### 6. The Public Interest

Courts have recognized the significant public interest in "the effective prosecution of those who violate the securities laws." Worldcom, 2002 WL 31729501, at *8. The U.S. Attorney argues that given the substantial overlap between the two proceedings, absent a stay, Ergoport, or other currently unknown civil defendants, will be able to obtain through civil discovery information about the Criminal Case that they would not be able to obtain through criminal discovery. The lead case on this issue cautions that:

> a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases. While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive. . . . A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.

Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962).

Courts in this Circuit have since recognized the risk of this "dodge" to be a critical concern. See, e.g., Downe, 1993 WL 22126, at *12 ("[A] stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a

potential criminal prosecution which parallels the subject matter of the civil action."); Beacon Hill, 2003 WL 554618, at *1 ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) ("Allowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules.").

The Court is not convinced that a civil defendant's access to, and use of, civil discovery to gain otherwise unavailable insight into a criminal proceeding, without more, provides compelling support for a discovery stay. See SEC v. Oakford Corp., 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges . . . they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government . . . beyond its desire to maintain a tactical advantage.").

More compelling, though, is the U.S. Attorney's proffer that, absent a stay, the Criminal Case risks exposure to those specific concerns against which the restrictions on criminal discovery are intended to guard, including that "(1) the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; [and] (2) the revelation of the identity of prospective witnesses may create the opportunity for intimidation." SEC v. Cioffi, No. 08 Civ. 2457 (FB), 2008 WL 4693320, at *2 (E.D.N.Y. Oct. 23, 2008).

The U.S. Attorney asserts that Ergoport is a "shell company" created with the "primary purpose . . . to conceal the illegal activities of the beneficiaries of the Ergoport bank accounts," thereby creating the serious "risk that the targets of the investigation will use civil discovery to

9

further their attempts to conceal their activities by attempting to manufacture or destroy evidence or to intimidate witnesses." (Reply 3-5; see also Tr. 3-4 ("[I]t appears from our investigation that Ergoport itself was created essentially in order to conceal the conspiracy that we are investigating. So given that an effort has already been made to conceal evidence, it is our concern that if additional discovery is provided and names of witnesses are provided, that the risk that further attempts to mask criminal activities will take place.").) The U.S. Attorney's concerns are heightened by the fact that most of the witnesses and evidence are overseas, thereby limiting the U.S. Attorney's ability to investigate or mitigate any possible intimidation or obstruction. (See Reply 5; Tr. 4.) Accordingly, the U.S. Attorney has identified specific and serious risks of prejudice to the Criminal Case sufficient to justify a stay of discovery in the Civil Case.

**D. Conclusion**

Having balanced the relevant factors, including the overlap of the two cases, the interest of the U.S. Attorney and of the public, and the prejudice to Ergoport, among others, it is hereby:

ORDERED that the U.S. Attorney's Motion is GRANTED. Discovery in this matter shall be stayed for six months from the date of this Order. Should the U.S. Attorney believe that a further stay is warranted, she may move the Court for appropriate relief at that time. Should the U.S. Attorney decide not to seek an indictment, she shall promptly inform the Court.

SO ORDERED.

Dated:     November 9, 2012
           New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge